# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
Jan 29 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>White iPhone 16e<br>Model Number: MD0E4LL/A<br>Serial Number: GR4W2GGQQL<br>Evidence Bag Number: S001379194 | )<br>)<br>)  Case No.  26MJ8056<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 and 846 | Possession of a Controlled Substance With Intent to Distribute; Conspiracy to Commit Same |

The application is based on these facts:
See Attached Affidavit of Drug Enforcement Administration Special Agent Richard Rodriguez, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Richard Rodriguez*
Applicant's signature

Special Agent Richard Rodriguez, DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:  01/28/26

*LP*
Judge's signature

City and state:  EL CENTRO, CA         HON. LUPE RODRIGUEZ, JR., U.S. MAG. JUDGE
Printed name and title

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**    White iPhone 16e

Model Number: MD0E4LL/A

Serial Number: GR4W2GGQQL

Evidence Bag Number: S001379194

The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.



## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 4, 2025, up to and including January 3, 2026.

a.  tending to indicate efforts to transport and distribute controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in distribution of cocaine, or some other federally controlled substance, within the United States and destinations beyond;

d.  tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.

# AFFIDAVIT

I, Special Agent Richard Rodriguez, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

**A-1:**   White iPhone 16e
Model Number: MD0E4LL/A
Serial Number: GR4W2GGQQL
Evidence Bag Number: S001379194
("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Samuel MATA (MATA) for possession with intent to distribute approximately 21.04 kilograms (46.39 pounds) of cocaine. The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I, Richard Rodriguez, am a Special Agent with the United States Department of Justice – Drug Enforcement Administration (DEA), and I have been so employed since May 2021. I am currently assigned to the Imperial County District Office and have been so since October 2021.

4. I graduated college from the University of Phoenix in May 2013. From July 2009 to September 2019, I was a U.S. Border Patrol Agent within the El Centro Station in

Imperial County, California. From September 2019 to March 2021, I was a Deportation Officer with Immigration and Customs Enforcement in El Centro, California. Upon being hired as a DEA Special Agent, I attended a sixteen-week DEA academy in Quantico, Virginia, where I received training in all aspects of controlled substance investigations, including, but no limited to, the enforcement of controlled substance laws, investigation of controlled substance trafficking, controlled substance recognition and terminology, case management, undercover operations, interviewing techniques, the gathering of evidence, preservation of a crime scene, and the use of electronic surveillance. In connection with my official DEA duties, I investigate criminal violations of federal controlled substance laws and related offenses, including violations of Title 21, United States Code, 801 *et seq*. and the Federal Controlled Substance Act. I have received training, both formal and informal.

5. During my employment with DEA, I have conducted investigations and/or participated in investigations related to unlawful importation, possession with intent to distribute and distribution of controlled substances. Through my training, experience, and interaction with experienced agents, and other narcotic investigators, I have become familiar with the methods employed by narcotics traffickers in general and large international-based Drug Trafficking Organizations to smuggle, safeguard and distribute narcotics, and to collect and launder narcotic related proceeds. I have also assisted in managing various types of informants and cooperating sources to help further investigations.

6. Based on your affiant's experience, participation in the investigation of narcotics organizations and conversations with other agents, including those from the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), Bureau of Alcohol, Tobacco, and Firearms (ATF), U.S Customs and Border Protection (CBP) and other state and local law enforcement officers familiar with narcotics trafficking and money laundering, your affiant has a clear understanding of the methods used by narcotics trafficking organizations.

7. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones, computers, and computer-related devices, such as USB memory sticks, to maintain and store communications and related items with co-conspirators in order to further their criminal activities. A common tactic utilized by narcotics traffickers is to transport controlled substances within the United States by concealing the controlled substances in vehicles that travel within the United States, specifically, within Imperial County prior to distribution of the controlled substances. With respect to the transportation and distribution of narcotics in this manner, I am aware that narcotics traffickers in Mexico and the United States frequently communicate with the individuals responsible for transporting and distributing the narcotics within the United States. These communications can occur before, during and after the narcotics are transported and distributed within the United States. For example, prior to the transportation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics transportation. When the transportation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity. When the narcotics have been transported further into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics for distribution within the United States.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that conspiracies involving distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone and computer-related evidence such as voicemail messages referring to the arrangements of payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity. I am also

3

aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

   a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

   d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.   On January 2, 2026, United States Border Patrol Agent (BPA) Martin Salvador Jr. was assigned to the primary booth at the Highway 86 United States Border Patrol Checkpoint, located near Westmorland, California. At approximately 10:05 p.m.

that day, a gold Chevrolet Malibu bearing Arizona license plate number 1NA7V2 (hereafter referred to as "the vehicle"), driven by Samuel MATA (MATA) approached the primary inspection booth. MATA was driving with S. K. as the second occupant and passenger of the vehicle. BPA Salvador observed as MATA drove the vehicle in an unsafe manner. According to BPA Salvador, as the vehicle approached his position, the vehicle turned abruptly and headed toward the visible barricades, then turned back to the center lane. The vehicle subsequently reached the primary inspection. BPA Salvador introduced himself as a border patrol agent to MATA, the driver, asked if MATA was under the influence of any substance. MATA replied that he (MATA) was looking at his phone. BPA Salvador, then asked MATA about the vehicle ownership. MATA stated that he is the owner of the vehicle and that he has owned the vehicle for at least a year. BPA Salvador continued and asked where MATA was coming from. MATA was slurring his words in his attempt to answer the question and BPA Salvador could not comprehend MATA's sentences. BPA Salvador also noticed that MATA avoided direct eye contact throughout the whole encounter with BPA Salvador. Due to MATA's display of an unusual behavior, BPA Salvador referred the vehicle and the occupants to the secondary area for further inspection.

10.  In the secondary inspection area, BPA Ronald Boren initiated a secondary inspection of the travelers and vehicle. BPA Boren first asked MATA about the vehicle ownership. MATA reiterated that he, MATA was the owner of the vehicle. MATA added that he was not under the influence of a substance; MATA stated that he was not drunk. BPA Boren then asked MATA for consent to search the trunk of the vehicle. MATA agreed and said "yeah". MATA then exited the vehicle, walked toward the back of the vehicle and opened the trunk for BPA Boren. Upon the opening of the trunk, BPA Boren observed a blanket used to cover some items. BPA Boren asked MATA for a consent to lift the blanket to which MATA agreed. BPA Boren removed the blanket and exposed a black plastic trash bag. When asked by BPA Boren about the content of the bag, MATA stated that he did not know and added that a friend put the trash bag in the trunk. BPA Boren proceed to

physically touch and feel the content of the bag. BPA Boren felt solid and squared shape like objects. Based on experience, BPA Boren suspected that the objects he felt in the trash bag could be narcotics. BPA then requested a canine sniff of the bag. MATA and passenger were asked to exit the vehicle and to wait in the secondary inspection waiting area.

11. On that same day, at approximately 10:15 p.m., canine handler, BPA Andres Gonzalez assigned at the Checkpoint, asked MATA for consent to conduct a canine air sniff of the vehicle, and consent to physically search the vehicle. MATA agreed and consented to the search of the vehicle. BPA Gonzalez and his Human and Narcotics Detection Dog (HNDD), are certified in the detection of marijuana, cocaine, methamphetamine, heroin and their derivatives, as well as the detection of concealed humans. BPA Gonzalez proceeded to conduct a sniff of the vehicle and BPA Gonzalez' HNDD alerted to the presence of trained odor in the trunk. Due to the canine alert, BPA Gonzalez searched the trash bag and discovered twenty (20) bricks wrapped in clear cellophane, similar to narcotics. Upon discovery of the bricks, BP agents escorted MATA and S.K. and secured them in a cell.

12. BP agents proceed to open a randomly selected brick, which revealed a white powdery substance. Agents then conducted a field drug test of the white substance found in a package, using a Narcotics Identification Kit (NIK). The substance tested positive for the characteristics of cocaine. The total weight of the narcotics was approximately 21.04 kilograms (46.39 pounds).

13. The same day, at approximately 11:33 p.m., Agents from the Drug Enforcement Administration (DEA) assigned to the Imperial County District Office (ICDO) were notified by U.S. Border Patrol and subsequently responded to the USBP Highway 86 Checkpoint. DEA Investigators Special Agent (SA) Richard Rodriguez, and SA Gerardo Castaneda conducted a post-arrest interview with MATA. Prior to questioning, MATA was advised of his rights. SA Castaneda read verbatim the English version of the Miranda Warnings from a DEA-13 form. MATA stated that he understood his rights and

signed the DEA-13 form. MATA stated that he was willing to speak to Agents without the presence of an attorney.

14. During the subsequent interview, MATA stated that he had knowledge of the presence of the bricks of cocaine found in the vehicle. MATA stated that he thought there were only four (4) to six (6) bricks of cocaine in the trunk. MATA seemed perplexed to learn that there were twenty (20) bricks in the trunk. MATA said that he picked up the vehicle earlier that day from a man MATA referred to as "B". MATA continued and stated that he was hired to drop off the bricks to an unknown associate in the Indio, CA area. MATA added that he was going to receive about $1500 as payment once he had completed the delivery.

15. At the conclusion of the interview, MATA was placed under arrest and charged with a violation of Title 21, United States Code section 841: Possession of a Controlled Substance with Intent to Distribute. MATA was then transported and booked at San Luis Regional Detention Center.

16. The Target Device was found inside the vehicle at the time of arrest and MATA was the driver of the vehicle at the time of arrest. MATA claimed to be the owner of the Target Device.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the transportation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their

arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on December 4, 2025, up to and including January 3, 2026, the day after the arrest of MATA.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer. With regard to electronic storage devices, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques,

including tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date this warrant is signed, absent further application to this court. Moreover, all forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Following the issuance of this warrant, I will collect the Target Device and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//

//

//

//

//

//

9

## CONCLUSION

22. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Richard Rodriguez*
Special Agent Richard Rodriguez
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  28th  day of January, 2026.

_____  9:42 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     White iPhone 16e

Model Number: MD0E4LL/A

Serial Number: GR4W2GGQQL

Evidence Bag Number: S001379194

The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.



# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 4, 2025, up to and including January 3, 2026.

a. tending to indicate efforts to transport and distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of cocaine, or some other federally controlled substance, within the United States and destinations beyond;

d. tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.